No. 21-10658

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

MICHAEL DWAYNE ALFRED

*Defendant-Appellant*.

---

*On Direct Appeal from the United States District
Court for the Northern District of Texas
Amarillo Division*

---

**APPELLANT'S INITIAL BRIEF**
*Criminal Appeal*

---

JASON D. HAWKINS
Federal Public Defender

BRANDON BECK
Assistant Federal Public Defender
1205 Texas Ave. #507
Lubbock, Texas 79424
(806) 472-7236
(806) 472-7241 (fax)
brandon_beck@fd.org
Bar No. 24082671
Counsel for Appellant

## **CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**Appellant:**          Michael Dewayne Alfred

**Defense Counsel:**     Bonita L. Gunden (trial)
                        Brandon Beck (appellate)

**Appellee:**           United States

**Prosecution:**        U.S. Attorney's Office for the Northern District of Texas
                        U.S. Department of Justice

**District Judge:**     The Honorable Matthew J. Kacsmaryk


                                    /s/ *Brandon Beck*
                                    Counsel for Mr. Alfred

## **STATEMENT REGARDING ORAL ARGUMENT**

In this case, the district court ordered a substantial restitution award without conducting a relative proximate-cause analysis, required by 18 U.S.C. § 2259 and *Paroline*, or even having the information necessary to do so. Oral argument is not necessary to decide this straightforward issue.

# TABLE OF CONTENTS

Certificate of Interested Persons ................................................................ ii

Statement Regarding Oral Argument ..................................................... iii

Table of Contents ................................................................................... iv

Table of Authorities ............................................................................... vi

Jurisdictional Statement ........................................................................... 1

Issues Presented for Review ..................................................................... 1

Statement of the Case............................................................................... 2

I.      Facts and Proceedings Below................................................... 2

II.     Summary of the Argument ....................................................... 4

Argument................................................................................................... 6

I.   The district court erred by ordering a substantial restitution award with
     no proximate-cause analysis, contrary to the requirements of 18 U.S.C.
     § 2259(b)(2) and the U.S. Supreme Court's holding in *Paroline v.
     United States*, 134 S. Ct. 1710 (2014)............................................ 6

     A.   There is no trace of a proximate-cause analysis on the face of the
          record .................................................................................... 6

     B.   The district court could not have impliedly conducted a proximate-
          cause analysis because it did not have the necessary information to
          do so ..................................................................................... 10

     C.   On this record, the correct restitution amount should have been $0.
          If the victim of the offense of conviction were identified, the
          amount should have been the mandatory-minimum of $3,000 ............. 13

     D.   The plea agreement's appeal waiver does not bar Mr. Alfred's
          challenge to the district court's restitution award................................. 15

Conclusion .................................................................................................15

Certificate of Service ...............................................................................16

Certificate of Compliance ........................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Paroline v. United States*,
   134 S. Ct. 1710 (2014) ................................................................*passim*

*United States v. Chem. & Metal Indus.*,
   677 F.3d 750 (5th Cir. 2012) .............................................6, 9, 13, 15

*United States v. Overby*,
   838 F. App'x 966 (6th Cir. 2021) .......................................................14

*United States v. Winchel*,
   896 F.3d 387 (5th Cir. 2018) ......................................................13, 15

**Statutes**

18 U.S.C. § 2252A(a)(1) ..................................................................2

18 U.S.C. § 2259 ....................................................................*passim*

18 U.S.C. § 2259(b)(2), Amy, Vicky, and Andy Child Pornography
   Victim Assistance Act of 2018, Pub. L. 115-299 (enacted Dec. 7,
   2018) ...........................................................................................5

18 U.S.C. § 3231 .............................................................................1

28 U.S.C. § 1291 .............................................................................1

**Other Authorities**

5th Cir. R. 32.3 ..............................................................................17

Fed. R. App. P. 32(a)(7)(B) .............................................................17

## <u>JURISDICTIONAL STATEMENT</u>

The district court had original jurisdiction over this case pursuant to 18 U.S.C. § 3231. This Court has appellate jurisdiction under 28 U.S.C. § 1291. Mr. Alfred filed a timely notice of appeal on June 29, 2021, which was eleven days after the district court entered written judgment. (ROA.99-107).

## <u>ISSUES PRESENTED FOR REVIEW</u>

1.    The district court ordered that Mr. Alfred pay seven victims at total of $61,500. The district court did so without conducting a proximate-cause analysis. Is the restitution award proper in light of Congress's and the Supreme Court's guidance?

## STATEMENT OF THE CASE

### I.    Facts and Proceedings Below

**The Basic Facts**. In June of 2020, the government charged Michael Dewayne Alfred, Appellant, with one count of Transportation of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(1). (ROA.27-29). On September 21, 2020, Mr. Alfred pleaded guilty to the one-count indictment. (ROA.129). His plea was pursuant to a plea agreement that contained a waiver of appeal except in certain circumstances. (ROA.204-11). On June 17, 2021, the district court sentenced Mr. Alfred to 240 months imprisonment, which was the statutory maximum. (ROA.168). The court then ordered Mr. Alfred to pay a $5,000 assessment under the JVTA and a total of $61,500 in restitution to seven victims depicted in images he possessed, under 18 U.S.C. § 2259. (ROA.168-72).

**The PSR and Restitution**. The initial PSR, issued on November 16, 2020, stated that restitution was not applicable because "the victim is not requesting restitution" and that the assessment under § 3014 was "also not applicable" "due to the defendant being indigent." (ROA.234). The government did not object to this conclusion; on the contrary, it adopted the presentence report. (ROA.241).

On December 17, 2020, U.S. Probation issued an addendum to the PSR, accepting two of Mr. Alfred's clarifications, rejecting a third, and amending the initial report with a statement from Mr. Alfred that he possessed a credit union

account in Amarillo "with a zero balance." (ROA.246-47). No other changes were made.

On April 12, 2021, U.S. Probation issued a second addendum to the PSR, which added a new suggested condition of supervised release and restated that "no requests for restitution have been made." (ROA.249).

On June 3, 2021—fourteen days before sentencing—U.S. Probation issued a third addendum to the PSR, advising the district court that, "subsequent to the disclosure of the PSR and Addenda," U.S. Probation had received "requests for restitution of the child pornography the defendant possessed." (ROA.252). The third addendum listed six victims, the amount they were requesting, and stated that "restitution in the amount of $51,500, is due and owing." (ROA.252-53). That number, $51,500, reflected the full amount requested. (ROA.252-53). Attached to the third addendum were a series of victim impact statements, from both victims and parents of victims, ranging from recent to over ten years old. (ROA.256-330).

On June 7, 2021—ten days before sentencing—U.S. Probation issued a fourth addendum to the PSR, advising the district court that it had received a restitution request from an additional victim. (ROA.332). This victim requested $10,000, which brought the total restitution sought to $61,500. (ROA.332-33). The victim impact statements, including the newest one, were all attached to the fourth addendum. (ROA.337-412).

In neither the PSR addenda nor the victim impact statements was there any semblance of the causation analysis contemplated by § 2259 or *Paroline*. Nor was there the information needed to conduct such an analysis. Only one victim included an itemized list of costs, (ROA.301), but still did not include anything that could be used to determine how much of those costs could be proximately attributed to Mr. Alfred. Another victim, by contrast, stated that her images had been found 22,000 times (in other cases) but did not include any costs. (ROA.344).

**The Plea Agreement**. On September 17, 2020, Mr. Alfred entered into a plea agreement with the government. (ROA.204-11). In the plea agreement, Mr. Alfred agreed to pay, under § 3014(a), the special assessment of $5,000 "if [he] is not indigent." (ROA.205,207). He also agreed to pay restitution "arising from all relevant conduct, not limited to that arising from the offense of conviction alone." (ROA.205). Finally, he waived his right to appeal with a few exceptions, including "a sentence exceeding the statutory maximum punishment." (ROA.209).

## II.    Summary of the Argument

*Paroline v. United States*, 134 S. Ct. 1710 (2014), limits the amount of a district court's restitution award, in cases involving child pornography, to damages proximately caused by the defendant. In December 2018, this analysis was codified

in 18 U.S.C. § 2259(b)(2).[1] Here, the district court erred because it did not conduct any proximate-cause analysis and did not even have the information needed to do so. Thus, this Court should vacate the restitution award in its entirety and remand to reform the judgment.

---

[1] Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. 115-299 (enacted Dec. 7, 2018).

# ARGUMENT

I. **The district court erred by ordering a substantial restitution award with no proximate-cause analysis, contrary to the requirements of 18 U.S.C. § 2259(b)(2) and the U.S. Supreme Court's holding in *Paroline v. United States*, 134 S. Ct. 1710 (2014).**

## Standard of Review

Any restitution amount that is not supported by competent record evidence constitutes an illegal sentence in excess of the statutory maximum; thus, this Court reviews the issue *de novo*. *United States v. Chem. & Metal Indus.*, 677 F.3d 750, 752 (5th Cir. 2012). Mr. Alfred preserved the issue for review by objecting at the sentencing hearing that, based on "the causal connection to these victims," it would not "be appropriate or substantively or procedurally reasonable to hit him with the full amount of restitution that these victims are requesting." (ROA.164).

## Discussion

### A. There is no trace of a proximate-cause analysis on the face of the record.

In *Paroline v. United States*, 134 S. Ct. 1710 (2014), the U.S. Supreme Court placed limits on a victim's ability to seek restitution from a defendant who possessed the victim's images. Depending on the case, such limitations can be highly restrictive. Under *Paroline*, the district court "must assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses." *Paroline*, 134 S. Ct.

1727, 1727-28. A court must use its "sound judgment and discretion" in the following considerations:

(1) the number of past criminal defendants found to have contributed to the victim's general losses;

(2) reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses;

(3) any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted);

(4) whether the defendant reproduced or distributed images of the victim;

(5) whether the defendant had any connection to the initial production of the images;

(6) how many images of the victim the defendant possessed; and

(7) other facts relevant to the defendant's relative causal role.

*Id.* at 1728. After this careful analysis, the court "should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." *Id.* at 1727. This is a dramatic departure from this Court's earlier approach, which was to treat all defendants jointly and severally liable for all of a victim's claim of restitution. *See id.* at 1735-36 (Sotomayor, J., dissenting).

Here, there is no proximate-cause restitution analysis visible or implied on the face of the record. There is no evidence that the district court took pause to consider, in any way, § 2259's limits on a defendant's restitution payment in this type of a case. At the hearing, the government simply told the district court what the

presentence investigation report said regarding restitution, which, in turn, simply

recited the amounts that the victims demanded: $61,500. Then, the district court

ordered it. The district court's analysis, on restitution, was as follows:

> Regarding restitution — and in response to Defendant's argument regarding mandatory restitution under Section 2259(a), the Court will note that the $3,000 amount referenced there is not an upward limit. It says only that — and this is 2259(b)(2)(B). It states only that the amount should be no less than $3,000, and then also in the very next paragraph, in section — subsection (c), it makes clear that a victim's total aggregate recovery pursuant to this section shall not exceed the full amount of the victim's demonstrated losses.
>
> The Court construes that as a potential limit on the absolute amount of victim loss recovered, but the Court at all times is guided by its prior determination that defendant does have a capacity to pay restitution, although not to the extent of a fine five or fifty times greater than any restitution awarded.
>
> The Court would also reference PSR Paragraph 25 and 26, and incorporate those by reference as modified by the addendum as a basis for the Court's determination that the victim impact in this case has been adequately proven beyond a preponderance of the evidence as reflected in the voluminous materials submitted to the Court.
>
> Here, pursuant to 18 U.S.C. Section 2259(c)(3), this is a child pornography trafficking offense, and thus restitution is mandatory as required by 2259(b)(2), and the Court finds that restitution is appropriate.
>
> The defendant is hereby ordered to make restitution in the amount of $61,500.

(ROA.169-70).

As reflect in these excerpts, the district court understood that restitution was mandatory but was unconcerned with the proper analysis and findings required when ordering an amount of restitution. That combination—knowledge of restitution's mandatory nature and a lack of analysis—lead to the same problem here that the Supreme Court dealt with in *Paroline*: a restitution award that is likely disproportionate to the defendant's actual role in the harm to the victim. *Paroline*, 134 S. Ct. at 1726 ("And there is a real question whether holding a single possessor liable for millions of dollars in losses collectively caused by thousands of independent actors might be excessive and disproportionate in these circumstances. These concerns offer further reason not to interpret the statute the way the victim suggests.").

The defendant, regardless of how unsympathetically he may be viewed by the district court, should only have to pay an amount of restitution proportionate to his share of the victim's harm. That is not what occurred here. Therefore, this Court should vacate the district court's restitution award. *United States v. Chem. & Metal Indus.*, 677 F.3d 750, 753 (5th Cir. 2012) ("The government failed to meet its burden in the first proceeding before the district court. It will not receive a second chance.").

**B.     The district court could not have impliedly conducted a proximate-cause analysis because it did not have the necessary information to do so.**

The government may argue that although the record is silent as to the district court's proximate-cause analysis, the court may have conducted this analysis in an implied or implicit manner that would pass muster yet not be evident on the face of the record. Such a conclusion is not possible in this case because the district court simply did not have the requisite information to conduct a proximate-cause analysis, expressly or impliedly.

At a minimum, to conduct a proximate-cause analysis, the district court should have some sense—to the extent possible—of the following information: (1) the number of past criminal defendant found to have contributed to the victim's general losses; (2) a prediction of the number of future offenders that may be caught and convicted for contributing to the victim's losses; (3) an estimate of the broader number of offenders involved; (4) knowledge of whether the defendant reproduced or distributed the images; (5) knowledge of whether the defendant had any connection to the initial production of the images; (6) how many images of each victim the defendant possessed; and (7) other relevant facts on relative causation. *See Paroline*, 134 S. Ct. at 1728. These are, essentially, the *Paroline* factors, all of which deal with information the district court should weigh. Here, the district court did no weighing and, in fact, had almost nothing to weigh.

The only information regarding the basis for restitution amounts, in the PSR, states as follows:

> On April 14, 2021, FBI SA Hendricks received the Child Identification Report (CIR) from NCMEC regarding the child pornography the defendant possessed and provided it to AUSA Frausto, Hood, and this officer. The CIR reflects the defendant possessed child pornography containing 108 known series, including but not limited to, the following: "aprilblonde"; "Dalmations"; "At School"; "Jenny"; "Lighthouse1"; "Middle Model Sister"; "Marineland1"; "PinkHeartSisters2"; "Sweet White Sugar"; "Tara"; and "Vicky." On May 13, 2021, Hood received the Victim Identification Report (VIR) from NCMEC which contained the contact information for the victims and/or their attorneys and requested victim impact statements and restitution requests from them. Subsequently, Hood sent this officer victim impact statements from victims in the series listed above, as well as, requests for restitution from victims from some of the series. Specifically, "Anna" from "Middle Model Sister" series is requesting $3,000 in restitution pursuant to 18 U.S.C. § 2259 and the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018. "Maureen" from the "Lighthouse1" series is requesting $10,000 in restitution for ongoing counseling and forensic examinations as a result of being a victim of child pornography. "Pia" from the "Sweet White Sugar" series is requesting $5,000 in restitution for ongoing counseling as a result of being a victim of child pornography. "Tori" from the "PinkHeartSisters2" series is requesting $20,500 in restitution for ongoing counseling, forensic examinations, and psychological reports as a result of being a victim of child pornography. "Jenny" from the "Jenny" series is requesting no less than $3,000 in restitution pursuant to 18 U.S.C. § 2259 and the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018. "Violet" from the "At School" series is requesting $10,000 in restitution for ongoing counseling

> and forensic and psychological examinations as a result of being a victim of child pornography. *"Sarah" from the "Marineland1" series is requesting $10,000 in restitution for ongoing counseling and economic losses she sustained as a result of being a victim of child pornography. In total, the cumulative amount of restitution requested from the victims is $61,500.* Victim impact statements provided by the victims and/or their attorneys are attached to this Addendum.

(ROA.332-33). Following this paragraph is a list depicting these same amounts with no additional information or analysis. (*See* ROA.333-34).

This information allowed the judge to know three facts: (1) seven victims were seeking restitution; (2) the amounts of their "restitution requests," and (3) in some instances, what they would use the money for. And the judge acted precisely on those facts and no more, awarding each of the seven identified victims precisely what they requested. *Compare* ROA.333-34, *with* ROA.104-05.

In order to believe that the district court conducted a proximate-cause analysis, one would have to believe that the victim or plaintiff's attorney in each case performed a proper proximate cause analysis such that their request aligned perfectly with the legally appropriate amount. That is a low probability proposition. Regardless, the record is bare of any information or analysis relevant to a proximate-cause analysis. Therefore, this Court should vacate the district court's restitution award. *United States v. Chem. & Metal Indus.*, 677 F.3d 750, 753 (5th Cir. 2012)

("The government failed to meet its burden in the first proceeding before the district court. It will not receive a second chance.").

Additionally, what little information that can be gleaned from the victim impact statements further suggests that there was no proximate-cause analysis contemplated by § 2259 or *Paroline*. One victim described receiving over 22,000 notifications prior to this case. (ROA.344). Another victim stated that her notifications could fill a 55-gallon drum, also prior to this case. (ROA.398). If true, both of these facts would significantly reduce Mr. Alfred's proximate role in their trauma. Further, some of the victim impact statements are far from current. (*E.g.* ROA.398). Without more up-to-date information, it would be impossible to determine, for example, what has already been paid from other perpetrators. Based on the PSR, the victim statements, and the transcript of the sentencing hearing, it is plainly apparent that the district court did not conduct the proper analysis—or any proximate cause analysis—when it decided to award $61,500 in restitution over defense counsel's objection.

**C.  On this record, the correct restitution amount should have been $0. If the victim of the offense of conviction were identified, the amount should have been the mandatory-minimum of $3,000.**

Prior to Congress's changes to § 2259 in 2018, the correct restitution amount absent a *Paroline* proximate-cause analysis is $0. *See United States v. Winchel*, 896 F.3d 387, 390 (5th Cir. 2018) (vacating a restitution award that was unsupported by

a proximate-cause analysis). In 2018, Congress imposed a mandatory-minimum restitution award of $3,000 to the crime's "victim." § 2259(b)(2)(B).[2] Courts, however, have construed § 2259's definition of "victim" to mean only the victim of the offense of conviction. *Paroline v. United States*, 572 U.S. 434, 445 (2014) ("A straightforward reading of § 2259(c) indicates that the term 'a crime' refers to the offense of conviction."); *United States v. Overby*, 838 F. App'x 966, 971-72 (6th Cir. 2021) ("The Mandatory Restitution for Sexual Exploitation of Children Act, 18 U.S.C. § 2259, authorizes the district court to order restitution payments for victims of the offense of conviction—not for victims of uncharged conduct.").

So While Mr. Alfred agreed to pay restitution for all relevant conduct (ROA.205), only the "victim" of the offense of conviction triggers the $3,000 restitution mandatory-minimum under § 2259(b)(2)(B). Thus, because the district court's restitution award was not rooted in a proximate-cause analysis, Mr. Alfred would only be required by statute to pay $3,000 in restitution to the victim depicted in the .mp4 file listed in the indictment. But until that person is identified, restitution is altogether improper absent a proximate-cause analysis.

---

[2] Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. 115-299 (enacted Dec. 7, 2018).

**D.**    **The plea agreement's appeal waiver does not bar Mr. Alfred's challenge to the district court's restitution award.**

Under this Court's precedent, Mr. Alfred did not waive his right to bring this appeal to challenge the district court's restitution award. *United States v. Winchel*, 896 F.3d 387, 389 (5th Cir. 2018) ("[I]f a court orders a defendant to pay restitution under § 2259 without determining that the defendant's conduct proximately caused the victim's claimed losses, the amount of restitution necessarily exceeds the statutory maximum."); *see also United States v. Chem. & Metal Indus., Inc.*, 677 F.3d 750, 752 (5th Cir. 2012).

## CONCLUSION

For these reasons, Mr. Alfred asks this Court to vacate the district court's restitution award and remand for the limited purpose of reforming the judgment.

Respectfully submitted,

**JASON D. HAWKINS**

**Federal Public Defender**
**Northern District of Texas**

/s/ *Brandon Beck*
Brandon Beck
Assistant Federal Public Defender
1205 Texas Ave. #507
Lubbock, Texas 79424
(806) 472-7236
(806) 472-7241 (fax)
brandon_beck@fd.org
Bar No. 24082671

15

## **CERTIFICATE OF SERVICE**

On October 19, 2021, I filed this brief through the Court's ECF system.

Opposing Counsel has therefore been served. I will also send a paper copy to

Appellant at the following address provided by BOP:

> Michael Dewayne Alfred      #60409-177
> FCI Big Spring
> Federal Correctional Institution
> 1900 Simler Ave.
> Big Spring, TX 79720

> /s/ *Brandon Beck*
> *Counsel for Mr. Alfred*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to 5th Cir. R. 32.3, the undersigned certifies this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B).

1. Exclusive of the exempted portions, this brief contains no more than 3,846 words.

2. This brief has been prepared in proportionately spaced typeface using Microsoft Word in Goudy Old Style typeface and 14 point font size.

3. The undersigned understands that any material misrepresentations in this certificate may result in striking the brief and sanctions.

*/s/ Brandon Beck*
Brandon Beck